MIDDLESEX CONCRETE PRODUCTS & EXCAVATING CORPORATION, complainant,

*v.*

NORTHERN STATES IMPROVEMENT CO., defendant-respondent and cross-appellant, and CITY OF RAHWAY, a municipal corporation, defendant-appellant.

[Submitted October term, 1940. Decided April 3d, 1941.]

*Mr. Eugene F. Mainzer* (*Mr. Orlando H. Dey,* of counsel), for the appellant.

*Mr. Samuel Koestler* (*Mr. Benjamin Nohemie,* of counsel), for the respondent and cross-appellant.

The opinion of the court was delivered by

HEHER, J.

Complainant instituted this suit under *R. S. 1937, 2:60-180,* for the enforcement of a lien for labor and materials furnished in the construction by the Northern States Improvement Co. (to be referred to as the "contractor") of an intercepting sewer system for the City of Rahway. The contractor interposed a counter-claim for the recovery of $40,158.76, the amount due under the original contract, and $78,047.63, the "reasonable value" of "additional and extra work" performed at the instance of the municipality. There was a prayer for a determination and the payment of the sums due the several lien claimants, and a decree for the balance. The municipality answered denying the claim for extra work and praying for "a trial at law of the issues" therein raised, pursuant to *R. S. 2:60-199,* as a procedure "necessary for the administration of justice in the premises," and that "further proceedings to determine the amount of moneys due and owing" by it to the contractor "be stayed until said matter has been adjudicated by an action at law in a court of competent jurisdiction."

By the decree under review, the contractor was awarded the amount acknowledged to be due under the original contract, and also the sum of $18,973.74 for "excess excavation," and an additional item not now in dispute. There are cross-appeals.

316

The primary insistence of the municipality is that Chancery did not have jurisdiction of the subject-matter of the contractor's counter-claim for "extras." It is said that it is a "mere money demand for unliquidated damages," and therefore that tribunal had no jurisdiction at the common law or under the state constitution (article VI, section I) ; that the legislature, by the cited statute, "did not intend to confer such jurisdiction;" and that, even so, the statute would in that respect at least be unconstitutional, in that it would "impair the jurisdiction or diminish the authority of the law courts which have exclusive jurisdiction to try such claims for unliquidated damages and to render money judgments thereon." The point is untenable.

The statute confers jurisdiction to determine the "amount due from the public agency to the contractor under the contract." Such agency may pay into the Court of Chancery the amount admitted to be due the principal contractor; and the "contractor or claimants shall not be thereby precluded from requesting a decree for a further sum subject to costs in case of failure to sustain the contention." *R. S. 1937, 2 :60-201, 2 :60-204.* There would be an obvious procedural deficiency in an act which invested Chancery with authority to determine the amount due from the municipality to the contractor in order to ascertain whether there was sufficient to liquidate the lien claims, and, if not, to direct a *pro rata* distribution, and withhold the power to enter a decree *in personam* for the surplus so found to be due from the municipality to the contractor. True, the earlier statute was so construed. *Norton* v. *Sinkhorn, 63 N. J. Eq. 313; United States Fidelity and Guaranty Co.* v. *Newark, 72 N. J. Eq. 841; affirmed, 74 N. J. Eq. 454.* But that act did not contain the provisions adverted to, and was in other respects dissimilar. *Vide, Commonwealth Quarry Co.* v. *Gougherty, 105 N. J. Eq. 642.* And it is the rule that equitable cognizance of a cause for a particular purpose embraces concurrent jurisdiction over all other matters in issue. *Capraro* v. *Propali, 127 N. J. Eq. 419.* It is not, of course, applicable if in contravention of the intention of the lawmaking body, express or implied. Such is not the case here. *R. S. 1937, 2 :29-9* and *2 :29-10*

also embody pertinent grants of jurisdiction. There was no demand for a jury trial thereunder. As stated, there was a prayer for a jury trial under the Mechanics' Lien Act (*R. S. 2:60-199*) on the ground that such was essential to the "administration of justice." But that point does not seem to have been pressed below; and it is not raised here. The grounds ultimately relied on were that the statute did not in terms confer jurisdiction of the subject-matter, and, if it did, it would be unconstitutional.

The enforcement of such statutory liens is peculiarly the subject of equitable cognizance. *Delafield Construction Co.* v. *Sayre, 60 N. J. Law 449; Norton* v. *Sinkhorn, supra; United States Fidelity and Guaranty Co.* v. *Newark, supra.* And it was within the competency of the legislature to invest Chancery with concurrent jurisdiction to enter a decree *in personam* for the moneys remaining after the satisfaction of the liens. This is merely an adaptation of the stated principle, grounded in the policy of avoiding a multiplicity of suits, that, if equity has rightfully assumed jurisdiction of a cause on any ground, it may ordinarily proceed to a determination of the entire controversy. *Vide, Pom. Eq. Jur. (4th ed.)* §§ *181, 231, 242.*

The assessment of unliquidated damages has always been deemed the peculiar function of a jury—one that is ordinarily inappropriate to the true province of a Chancellor. But Chancery has such power where the cause is otherwise within its control and the interests of justice will be served by that course. *Pom. Eq. Jur.* § *237.* And in this state, the statutes adverted to authorize the submission of such an issue to a jury.

The next contention is that there was error in the computation of the cubic yardage of excavation classable as "extra," and compensable as such. The decree awarded such compensation on the basis of 7,499.5 cubic yards of earth excavation, while the municipality maintains that the proper quantity was 2,099.5 cubic yards. This point is well made.

To establish unit prices, the excavation work was divided by the contract into three classes—1a, 1b and 1c; and the contractor undertook to excavate an estimated number of

cubic yards in each class at a fixed unit price—*i. e.*, 1a, 47,500 c.y. @ 65c. per c.y.; 1b, 8,300 c.y. @ 85c. per c.y; and 1c, 3,000 c.y. @ $1.05 per c.y. There was also a provision that, if the "actual conditions encountered in the construction of the work" required "such modification in the plan as to increase or decrease the quantities," or "modifications that change the amount of the various classifications of the work, the City has the right to make such changes up to thirty per cent. of the proposal quantities at contract prices."

During the progress of the work, controversy arose between the municipality and the contractor as to whether payment should be made upon the "strata" basis or according to "depth." These formulæ varied both in price and in quantity. The city's engineer proceeded on the hypothesis that compensation should be made on the "strata" basis; and the contractor interpreted the contract as calling for payment on the "depth" plan. There ensued negotiations to resolve the dispute, and a final conference resulted in a clarification of the issue and a consequent modification of the contract, reduced to writing in the form of letters which passed immediately. The city's engineer wrote as follows:

"I have your protest against our interpretation of the Contract relative to the method of measuring for payment for excavation under Item 1. Your interpretation of the Contract is that the unit prices for depths greater than eight (8) feet do not apply simply to that part of the excavation between the respective ranges in depth, but that your prices for excavation for greater depths than eight (8) feet must be applied to all excavation from the surface to the bottom of the trench.

"After a careful re-reading of the specifications, I am satisfied that your contention is correct. It is obvious, however, that the admission of your contention clearly indicates that the quantities of excavation for the various depths as set forth in the proposal are wrong, and should be corrected as follows:

    Item 1a 20,400 Cu. Yds.
        (Instead of 47,500 Cu. Yds.)
    Item 1b 20,400 Cu. Yds.
        (Instead of 8,300 Cu Yds.)
    Item 1c 18,000 Cu. Yds.
        (Instead of 3,000 Cu. Yds.)

"Kindly express your endorsement of these changed quantities as applying to your Contract on the basis of the acceptance of your interpretation of the clause for measurement of excavation under Item 1."

And the contractor replied as follows:

"We accept your revised estimate of quantities as listed below as an approximate estimate of the excavation quantities, and agree to accept payment at the Contract unit prices for the quantities of excavation up to those mentioned:

| | |
|---|---|
| Item 1a . . . . . . . . . . . . . . . | 20,400 Cubic Yards |
| Item 1b . . . . . . . . . . . . . . . | 20,400 Cubic Yards |
| Item 1c . . . . . . . . . . . . . . . | 18,000 Cubic Yards" |

The decisive question is whether the thirty per cent. clause adverted to governs the admeasurement of the compensation payable to the contractor under the contract as thus revised. We resolve it in the affirmative.

There was a modification of the contract only in the respects outlined in the memoranda *supra*. The question of modification is necessarily one of intention; and we discern no basis for the inference of a common intention to eliminate the thirty per cent. clause as regards the "revised estimate of quantities" embodied in the writings exchanged. The minds of the parties did not meet on that proposition. There was evidence that the contractor's president demanded that these amended estimates be treated as maximum quantities beyond which the contractor would not in any event be obliged to excavate at the prescribed unit prices, but the city's engineer refused the proffered stipulation; and the letters are evidence of this refusal. It is to be noticed that the revision did not change the total estimated quantity of excavation, but only the allocation thereof for the establishment of the three separate unit prices.

Moreover, the engineer was not vested with authority to waive this provision on behalf of the municipality; and the testimony reveals that this was his position throughout the negotiations. What he did was merely to consent to an amendment of the writing that would express the true agreement of the parties. He accepted the contractor's interpretation as "correct;" and he pointed out that, on such hypothesis, it was "obvious" that "the quantities of excavation for the various steps * * * are wrong, and should be corrected" as therein stated. The contractor signified its unqualified assent. And there was evidence, too, of the contractor's

interpretation of the revised contract as inclusive of the thirty per cent. clause—*e. g.,* the contents of the general estimates submitted. Plainly, it was the common understanding that the original contract should continue in full force and effect except as modified by the letters.

But the contractor contends—and this is made the major part of its cross-appeal—that the agreement thus made by its president was a *nudum pactum,* and he was also without authority in the premises. These contentions are without efficacy. No consideration is necessary to support a reformation of a written contract limited to a restatement required to express the true intention of the parties. And a revision to clarify an ambiguity in the writing, or to settle a *bona fide* dispute, *e. g.,* as to the meaning of the writing, is grounded in an adequate consideration. *New Jersey Trust and Safe Deposit Co.* v. *National Gas and Construction Co., 71 N. J. Law 29; Levine* v. *Blumenthal, 117 N. J. Law 23; affirmed, Id. 426.* The compromise of the differences, and the mutual agreement to terminate the old contract and to proceed under the new stipulations, are deemed in law a sufficient consideration. The rule was early laid down that "the same consideration which existed for the old agreement is imported into the new agreement which is substituted for it." *Stead* v. *Dawber, 10 Ad. & El. 57, 66; 113 Eng. Reprint 22, 26.*

The municipality also complains that compensation was allowed to the contractor on the *quantum meruit,* whereas the contract provided that, as to the "extras," it be calculated on the basis of cost to the contractor of material, labor and insurance chargeable to such excess excavation, plus fifteen per cent. to cover profit, superintendence and general expense.

While the case made by the contractor in this respect is not altogether satisfactory, we are of the view that the allowance thus made does not contravene the standard prescribed by the contract. If the city has not been injured in this behalf, there is no ground for reversal.

These considerations also dispose of the contractor's contention that there was error in calculating compensation for the "extras" at $3.58 rather than $4 per cubic yard.

And there is no substance to the city's contention that the

contractor is not entitled to recover at all for the "extras," since its claim therefor was rejected by the engineer.

Under all the circumstances, the provisions for interest are not reasonably open to question. But we are of the view that the city should not be burdened with a counsel fee. The apportionment of the master's fee and the cost of the steno-graphic service shall stand.

The decree is accordingly modified, and, as so modified, affirmed.

DONGES, J. (Dissenting.)

I concur in the views expressed by the Vice-Chancellor in disposing of the case except in one particular. The decree below allowed compensation for the excess excavation on a *quantum meruit* basis, fixing $3.58 as the rate for each cubic yard. It is my view that that portion of the contract which reads: "Where an extra is requested and where not otherwise provided in the contract, the contractor shall submit a lump sum price to perform the work involved in such extra based upon an estimate of quantities and extent of work. If, in the opinion of the engineer, such lump sum price is in excess of the reasonable estimated cost, then the work may be per-formed by the contractor on a basis of furnishing labor, material, and insurance at cost, plus fifteen (15%) per cent. to cover profit, superintendence and general expense," is con-trolling. The contractor submitted a price of $4 per cubic yard for 1-c type of excavation and the engineer rejected it. In that situation, I think the contractor was relegated to the cost plus basis required by the contract and can see no justifi-cation for disregarding the contractual provision and per-mitting a recovery upon a *quantum meruit* basis.

*For modification*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.